NEW ENGLAND GUILD *v.* UNITED STATES (INTERNATIONAL CLEARING HOUSE OF NEW YORK, INC., APPEARING AS PARTY IN INTEREST) (No. 4133)[1]

United States Court of Customs and Patent Appeals, April 25, 1938

*Joseph F. Lockett* for appellant.
*James W. Bevans* for Party in Interest.
*Lane & Wallace (Samuel Isenschmid* of counsel), *amici curiae.*

---

[1] T. D. 49577.

# 43

Before Garrett, Presiding Judge, and Bland, Hatfield, Lenroot, and Jackson, Associate Judges

Jackson, Judge, delivered the opinion of the court:

The question for decision is whether certain imported wool hooked rugs are dutiable under paragraph 1116 (a) of the Tariff Act of 1930, at 50 cents per square foot as contended by the appellant, or under paragraph 1117 (c) of the act, at 30 per centum ad valorem, as assessed by the collector and claimed by the importer.

Appellant, a domestic manufacturer of wool hooked rugs, brought its action by virtue of section 516, subsections (b) and (c), of the Tariff Act of 1930, which permits a domestic manufacturer or producer, after complying with certain formalities set forth in the section, to sue the United States in the United States Customs Court to establish a higher rate of duty than that which has been levied upon an importation of merchandise which is competitive with the merchandise of the domestic manufacturer or producer.

In the instant case the United States is but a formal party, and the party in interest (intervening importer) is defending the classification of the collector as appellee. The trial court overruled appellant's protest and judgment was entered accordingly. Motion by appellant for a rehearing was denied. The appeal is from the judgment and the denial of the motion for rehearing.

The paragraphs of the Tariff Act of 1930 pertinent to the issue are as follows:

Par. 1116. (a) Oriental, Axminster, Savonnerie, Aubusson, and other carpets, rugs, and mats, not made on a power-driven loom, plain or figured, whether woven as separate carpets, rugs, or mats, or in rolls of any width, 50 cents per square foot, but not less than 45 per centum ad valorem.

Par. 1117. (c) All other floor coverings, including mats and druggets, wholly or in chief value of wool, not specially provided for, valued at not more than 40 cents per square foot, 30 per centum ad valorem; valued at more than 40 cents per square foot, 60 per centum ad valorem.

Counsel representing all of the parties agreed to the following stipulation:

1. A base fabric of suitable size is cut from a piece of burlap made on a power driven loom.

2. The design is stencilled upon this base fabric, as shown in the partly woven rug (Illustrative Exhibit A) filed herewith and made a part of this stipulation.

3. Wool yarns of different colors are looped through the base fabric with a hand-operated hooker, as shown in Illustrative Collective Exhibit B attached hereto and made a part of this stipulation; or, with a hooker driven by electric power and guided by hand, as shown in Illustrative Collective Exhibit C, also attached hereto and made a part of this stipulation.

4. That the rugs forming the subject matter of the above-entitled protest were manufactured with a hand-operated hooker, as shown in said Illustrative Collective Exhibit B.

5. When the hooking process on the rugs forming the subject matter of the above-entitled protest is finished, the burlap is trimmed around the edge, leaving a width of about 1½″, and this is turned and sewed to the rug by hand on the underside to serve as a hem or binder, as shown in Illustrative Exhibit A.

Appellant claims that the imported rugs should have been classified in accordance with its contention for the reasons that they were not made on a power-driven loom and that they are similar in construction to the floor coverings provided for in said paragraph 1116 (a).

Many witnesses were called in support of appellant's contention, some of whom are deeply versed in the lore of ancient and modern rug making, and others who are exceptionally skilled in the art of making beautiful domestic wool hooked rugs.

Appellee, party in interest, urges that the decision of this court in *United States* v. *Marshall Field & Co.*, 18 C. C. P. A. (Customs) 403, T. D. 44642, is decisive on this issue for the reason that the rugs there are the same in all material respects as the rugs here, and that the change in the rate of duty in paragraph 1116 (a) of the Tariff Act of 1930 from the rate in the same numbered paragraph of the Tariff Act of 1922, in no way changed the scope of the two said paragraphs as to the kind of floor coverings classifiable thereunder. The doctrine of long-continued administrative practice is also invoked by appellee.

Each of the parties relies on legislative history to support its contention as to the intent of Congress.

The corresponding provisions of paragraph 1116 of the acts of 1922 and 1930 read as follows:

| *Tariff Act of 1922* | *Tariff Act of 1930* |
|---|---|
| Oriental, Axminister, Savonnerie, Aubusson, and other carpets and rugs, not made on a power-driven loom; carpets and rugs of oriental weave or weaves, produced on a power-driven loom; chenille Axminister carpets and rugs, whether woven as separate carpets and rugs or in rolls of any width; all the foregoing, plain or figured, 55 per centum ad valorem. | (a) Oriental, Axminister, Savonnerie, Aubusson, and other carpets, rugs, and mats, not made on a power-driven loom, plain or figured, whether woven as separate carpets, rugs, or mats, or in rolls of any width, 50 cents per square foot, but not less than 45 per centum ad valorem.<br><br>(b) Carpets, rugs, and mats, of oriental weave or weaves, made on a power-driven loom; chenille Axminister carpets, rugs, and mats; all the foregoing, plain or figured, whether woven as separate carpets, rugs, or mats, or in rolls of any width, 60 per centum ad valorem. |

We cannot see any material difference in the descriptive language of the two paragraphs, except that mats are provided for in the act of 1930. The paragraph of the Tariff Act of 1922 was divided into two parts in the Tariff Act of 1930, and the rates of duty changed. On rugs not made on a power-driven loom, the duty on those of higher value was decreased from 55 per centum ad valorem to a minimum of 45 per centum ad valorem, and on those of lower value the duty was increased from 55 per centum ad valorem to a specific duty

of 50 cents per square foot, but not less than 45 per centum ad valorem. It is in the second of these classes that appellant contends the rugs here should be classified.

From a comparison of the two paragraphs it clearly appears to us that no class of rugs was intended to be included in the Tariff Act of 1930 that was not included in the Tariff Act of 1922. Therefore we are brought to the consideration of the sole question as to whether the rugs in the instant case are by the manner of their manufacture properly classifiable as claimed by the appellant.

As may be seen from the stipulation above set out, the rugs in the instant case are each composed of a stencilled burlap base made on a power-driven loom through which base wool yarns of different colors are looped by means of a hand-operated hooker following the design of the stencil.

The hand-operated hooker here is an instrument about nine inches long, the upper part of which is a wooden handle set at an angle of about 45 degrees from the device. The handle is attached to a flat metal shaft at the end of which and superimposed upon it is movably fastened, by means of a screw and nut, a generally flat pointed needle approximately two inches long. At the base of the needle is an opening through which the yarn is passed. In order to secure even tension on the yarn it is extended back toward the handle and turned around a spiral-shaped wire at the base of the presserfoot. The presserfoot is that part of the instrument which contains a metal bar fitting closely to the under side of the needle and which is pushed and drawn back through the opening in the burlap base made by the needle. The function of the presserfoot is to push the yarn through the base to form the loop on its under side. With this kind of hand-operated hooker the face of the rug is downward in the frame. With the use of this hooker the length of the loops and the space between them are automatically made. The operator merely follows the stencilled lines, working alternately the needle and the presserfoot.

The old-style hand hooker is in the form of a short crochet needle with an egg-shaped wooden handle. With this kind of hooker, the loops are pulled through the base and the face of the rug is upwards on the frame. It would seem from the record that the most luxurious and expensive domestic hooked rugs are made with the old-style hooker, the use of which appears to require ultimate skill in the art. This is the kind of rug made and the method used by appellant's witnesses who are hooked rug makers.

The nap of the imported rugs is in loop form but it is not at all rare with hooked rugs generally to cut through the top of the loops so that the nap will consist of a straight clipped material. When so cut the rug is still known as a hooked rug.

In the *Field* case, *supra*, relied upon by appellee, it was held that the rug involved was not of the class embraced by paragraph 1116 of the act of 1922. The process of producing the rug there reads from the opinion as follows:

Colorless cotton webbing is first woven on a power loom and is made to the size of the rug to be produced. This canvaslike webbing is strong and firm in character and makes up the basis or foundation of the rug. Upon this webbing is first stenciled the design of the rug. It is then stretched in a frame and yarns of different color are looped into the webbing and cut by a patented machine. The yarns are looped around a portion of the webbing and both cut ends on the top of the rug form the pile. The yarns are not knotted or tied in any manner and may be easily removed by pulling the loop on the bottom side of the rug. The machine has a head which looks very much like the head of a sewing machine and is so made as to be moveable to different portions of the rug. In the head is the needle and cutting apparatus which inserts and cuts the wool yarns. The yarn in the machine is changed for each color required for the design. After the design has been made in the foregoing manner, the rug goes through a process of shearing, tigering, and cleaning.

The process of producing the rug at bar and that of making a hooked rug are somewhat similar, except that in producing the hooked rug the yarn continues through the whole of the weaving, whereas in the instant case the yarn is cut after it is looped by the needle in and through the webbing. It is not disputed that the webbing is produced on a power-driven loom. It is also clear that the design which is formed of the tufts is not made on a power-driven loom but by a machine as above described.

The points of difference in the making of the rug in the *Field* case, *supra*, and the making of the rug in the instant case, appear to us to be immaterial. The fact that the loops of the rug in that case were cut does not change the manner of making materially. Hooked rugs many times have the loops cut. The manner of forming the loops is apparently similar both here and in that case. In both it was accomplished by a reciprocating needle, power-driven but hand-guided there, hand-driven and hand-guided here. In each instance it seems apparent that the length of the loops and their juxtaposition is fixed automatically.

An examination of a rug in the *Field* case, *supra*, offered as an exhibit in this case, shows that it is made of a finer yarn than those in this case, and it is probably a much higher-priced article. This difference, however, does not change the essential character of the rug for tariff purposes. It is our opinion that the rugs here are similar in all material respects to the rugs involved in the *Field* case, *supra*.

Appellant urges that the *Field* case, *supra*, is not controlling herein, in that the opinion of the court is *obiter dicta* in so far as it pertains to paragraph 1116 of the Tariff Act of 1922. The rugs in that case were not classified under said paragraph 1116, but the Government contended, both in its assignments of error and its brief, that the rugs fell within that classification. The decision of this court necessarily

involved a discussion and consideration of the applicability of said paragraph 1116 under the doctrine of "relative specificity" which was vigorously contended for by the Government. We, therefore, cannot agree with appellant that the *Field* case, *supra*, does not here apply.

Since we have determined that the rugs herein are the same in all material respects as those in the *Field* case, *supra*, and that the decision in that case correctly stated the law with respect to proper classification of the rugs there involved, we do not deem it necessary to repeat here what is contained in the opinion there to show congressional intent with respect to the Tariff Act of 1922.

Appellant claims that Congress clearly intended that rugs such as those in this case should be dutiable under paragraph 1116 (a) of the Tariff Act of 1930. It quotes from the report of the Committee on Ways and Means of the House of Representatives, page 111, which accompanied H. R. 2667, to the effect that paragraph 1116 relates to rugs mainly handmade and to cheap handmade oriental rugs which compete with the higher grades of American machine-made rugs and for that reason should carry a higher rate of duty than was contained in the act of 1922.

Appellant proceeds on the theory that the rugs herein, not being made on a power-driven loom, are handmade, and because they are cheap they must be low-grade oriental rugs competing with the higher grades of American machine-made rugs. We can see nothing oriental about the rugs herein in appearance, design, or structure. We cannot agree with appellant that the rugs in this case are handmade. They are certainly not so made as compared to the making by hand of the imported rugs so well described by the witnesses.

All of the testimony in the case is to the effect that, as to the handmade rugs provided for *eo nomine* in said paragraph 1116 (a), the warp, the weft, and the colored material are looped or knotted or fastened together by the fingers, and the whole body of the article is gradually formed row upon row by such manipulation until the rug is completed. This seems to us clearly to show a handmade rug. The method, in our opinion, would apply to either a cheap or high-grade handmade rug.

On the contrary, the rugs involved here have no handwork about them at all except the guiding and manipulating of an apparatus which, without any skill or art on the part of the operator, automatically forms and regulates the loops on a stencilled design. The burlap base is concededly made on a power loom. The stencilled design is of course formed by means of a stencil and some colored matter. The loops are put on by a hand-powered and directed machine. We cannot, on the record before us, hold that the rugs herein are handmade rugs as intended by Congress, and since, as

appellant argues, congressional intent seems to include within said paragraph 1116 (a) "only handmade articles," it must necessarily follow that classification of the rugs herein cannot be under that paragraph.

Under the broadest construction of the record we can think of, all that can be said is that the rugs here are partly made on a power-driven loom and partly made by hand.

We reaffirm the holding in the *Field* case, *supra*, expressed in the following language:

We do not think that the term "Oriental, Axminster, Savonnerie, Aubusson, and other carpets and rugs not made on a power-driven loom" was meant to include a rug so dissimilar to the rugs named as is the merchandise at bar. * * *

The facts in *Hudson Forwarding & Shipping Co., Inc.* v. *United States*, 68 Treas. Dec. 263, T. D. 47871 not appealed to this court, and those in the case of *United States* v. *Rietmann Pilcer Co.*, 24 C. C. P. A. (Customs) 371, T. D. 48830, cited by the appellants, are so unlike the facts in the instant case that discussion of them is unnecessary. In view of our conclusion, it is unnecessary to pass on the application of the rule of long-continued administrative practice invoked by appellee.

Appellant also contends that the trial court erred in not considering the purpose of the Tariff Act of 1930 to encourage and protect American industry and labor. As far as the record is concerned we find no testimony that full protection is not accorded domestic interests, but, even if such were shown, it would not be the function of the courts to do anything except to apply the law of classification as written by Congress. On this point the remedy for appellant must be sought in legislation.

For the reasons heretofore stated, the judgment of the United States Customs Court is *affirmed*.